Good morning. May it please the Court. Donald R. Peppermint with Bleacher, Collins & Peppermint on behalf of the Plaintiff Appellant, Novation Ventures, LLC. May I reserve two minutes for rebuttal? Yes. Please be aware that the time remaining is your total time. Whatever is shown on the clock is the total time you have. I understand. Thank you. Before I launch into my argument, I'd like to send my best wishes to Judge O'Connell, her family, and her staff in hopes for a speedy recovery. Thank you. The District Court's order dismissing Novation's second-minute complaint is infected and flawed by the overzealous application of the Supreme Court's twumbling Iqbal decisions. Indeed, Novation's antitrust, Lanham Act, and unfair competition claims were summarily dismissed by inserting the word implausible before Novation's causes of actions or elements thereof. The District Court's order improperly ignores and or reshapes the well-pled factual allegations of Novation's 41-page second-minute complaint. Further, rather than construe and infer the allegations in Novation's favor, as it must, the District Court instead engaged in rampant, impermissible fact-finding at the pleading stage. After de novo review of Novation's well-pledged second-minute complaint and the fact-intensive issues it raises, Novation respectfully requests that the order of dismissal be reversed in all respects. This appeal raises three issues. First, did the District Court err in finding that Novation's pleading of the antitrust injury element of its antitrust claims was implausible and insufficient? Two, did the District Court err in finding at the pleading stage that no reasonable fact-finder could find a likelihood of confusion under the Lanham Act and that there is no plausible likelihood of deception? Last, did the District Court err in concluding that none of the alleged conduct violated either the unlawful or unfair prongs of Section 17-200 of the California Businesses and Professions Code? Novation's antitrust claims. Well, if we go really to the California basis, it seems to me so goes the federal claims, so goes the UCL claim. Would you say that? Well, I think the District Court did not reveal. Well, I'm really trying to suggest to you that I'm not going to pay a lot of attention to the state law claim unless you win on the federal claims somehow, and I'm trying to see if there's anything in the UCL which would suggest that I ought to give better emphasis for the state claim. Yes, Your Honor, to lose her standard under 17-200 only because only restitution and injunctive relief is permitted, no treble damages or damages. Where the District Court went astray on the unfair comp claim is that you do not require an antitrust violation in order to satisfy the unfair prong. In the Cell Tech Communications v. L.A. Cellular case, 20 Calforth at 187, the Supreme Court explained, quote, the word unfair in Section 17-200 means conduct that threatens an incipient violation of an antitrust law or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of law or otherwise significantly or threatens or harms competition. All right, I got your idea. I'm not sure I agree with it, but I got your idea. Let's go back to the antitrust injury arising from the purchase. We are not claiming antitrust injury arising solely from the purchase. It's the acquisition that gave J.G. Wentworth and Peachtree the 75 percent market share monopoly power. So you don't believe there's any antitrust injury arising from the purchase, and I can move off that point. Not standing alone. It's the synergic dispute. All right, so we got to go to something else. How about we go to anti-competitive conduct, the injury that flows from the anti-competitive conduct? The relevant market is the purchasing of the structured settlement payment receivables. Given this definition, which is the relevant market, why in this complaint did we concentrate on the Google AdWords market? Well, I think the district court focused on that. The complaint actually – Well, frankly, reading your complaint and reading what the district court did, it seems to me there's more than one relevant market than Google, right? Well, that would be one shopping tool distribution channel. The most important is Internet. Well, as I read the complaint, the relevant market was, and that's why I quoted it to you, the purchasing of structured settlement payment receivables from individual consumer sellers. That says a wide market. Yet what we're really talking about here is the Google market. And I'm having a tough time seeing why we can make that, if you will, allegation when we have a bigger market that's relevant. Well, as far as selling channels and advertising channels, yes, I imagine my client could fly a plane with an advertising banner behind it, but that's not how people sell their structured settlements. It's primarily a shopping tool used just to go on the Internet, find people that will give a bid, take the best bid, the highest bid on your structured settlement and put the deal. Well, but your complaint talks about a television market, right? It's not a very big market. But that's what it talks about. It talks about other search engine markets as well. Correct. The foreclosure. And nobody suggests that you're foreclosed from any of those other markets, right? Well, they're not major markets. We're talking about the biggest market is what we're foreclosed from and not complete foreclosure. You don't require complete foreclosure in order to state antitrust injury. And we also allege at paragraph 14 of the second amendment complaint, it's the Internet ads, the websites themselves, and print media put out by the defendants that causes the confusion. The confusion here is the facade that they're true competitors that will give competitive bids, when in reality they're the same company, the same headquarters, the same information. I was just trying to look at the market I'm supposed to look at when I'm looking at the injury. And the court says that you can get what you want by paying more. And the exhibits show that you can get the top spots by paying more. So why are you foreclosed? Well, because they're monopolists and they spend $20 million, and that's not something the smaller competitors can do. But that's one aspect. Any amount of money we want to spend isn't going to change their websites, which does not disclose common ownership, sharing of information. Well, we can get to the false advertising or that kind of a claim. I'm only looking at all your claims. I'm going antitrust injury arising from purchase, that that flows from the anticompetitive conduct. Next, we can go, if you want, to the Lanham claim. Well, the conduct is basically the same. The deceptive conduct forms the basis of the antitrust claim as well. And to make the record clear, because the opponent keeps arguing on appeal that we're asserting a predatory below-cost pricing claim. We're not. So the court made a strawman argument below that because you can't prove predatory below-cost pricing, you don't have antitrust injury. It's not a claim we're even asserting. How could you have below-cost pricing on a bid for a structured settlement? All right. Let's go to the false advertising claim. It's my understanding that you have to allege a false statement of fact in a commercial advertisement about its owner and others' product in order to have a false advertising claim, right? Well, the advertisement or the website just needs to be misleading, confusing, or deceptive. Well, just a minute, just a minute. To determine the false statement, William Morris says plaintiff must show the statement is literally false, either on its face or by necessary implication. Well, how are their statements false on their face or by necessary implication? Well, in the Southland Sod Farms case, 108F31140, this court explained that, quote, this was available under Section 43A if it could be shown that the advertisement is misled, confused, or deceived the consuming public, and that's what we've pled in the complaint, that the websites and ads are confusing. They lead people to believe they're dealing with true competitors that are giving competitive bids when they're not. Okay, so what you're suggesting is that you can plead this by implied deception and you're citing that case. I'm not sure that case says that, but I understand your argument. So it's not a false statement of fact, but an implied deception. If all the facts are true, then the only way this would be a deception is if somehow they should have said they were all owned by the same company, correct? That's what we plead. To me, it's no different than CarMax owning four different car-buying entities with different names. You go to CarMax, you get a quote for $500 for your used car. You go down the street thinking you're getting a competitive bid, and that company is also owned by CarMax, and surprise, surprise, you get another bid for $500. That's what's going on here. Well, but just a minute. Here's what the district court noted. Novation's exhibits showing Google's search results reveal the advertisements are clearly labeled as such. The fact that the advertisements are so labeled dispels any reasonable consumer's confusion. That's what the district court said. I know that's what the district court said. That's confusing in itself. Why is that not true? Well, it seems to me that what the district court's saying is that where the alleged consumers or their advisors are dealing with structured settlements, that they're less likely or they're likely to exercise a high degree of care and precision and, therefore, no confusion. Well, this is a 12B6 motion. The court had no benefit of discovery or expert input. I don't think a district court should be making those types of findings on a motion to dismiss on a blank record. We've alleged that it was an ordinary consumer exercising ordinary caution, not a sophisticated consumer. And what's being done here is people that get structured settlements out of a personal injury case, they win the lottery. These are not necessarily sophisticated people. Just because you bought a lottery ticket and won, it doesn't mean you're sophisticated. And there again, that's a fact issue as to who the consumer is here, not something to be decided on a motion to dismiss. Most of those cases, it's a summary judgment or trial, and then you're looking at the standard of the consumer, not on a motion to dismiss. Even the case the judge cited for that, it's a finding of fact. Sometimes, that was a summary judgment case. Typically, likelihood of confusion and the level of the consumer are fact issues. But there again, we're back to the website, the print media, and the ads. It's not just the ads. The district court wanted to focus on the ads. I don't dispute that an ad is an ad. We're saying the ads are deceptive because they don't disclose. To me, it's the same as Verizon advertises an iPhone for $20 in an ad, but doesn't bother to tell you to get it for $20, you have to sign a five-year contract. That's an omission, but it's a material one. Here, people would like to know that when I'm getting a bid from Peachtree, Olive Branch, and JG Wentworth, that the same company colluding on the bid. Why? Because you want to get a competitive bid. If my client were able to – What makes you say they're not competitive bids if they are not corporations, even though totally owned by the same, but they're corporations out there in the marketplace, which are, in effect, competing with each other, though totally owned by the same? We believe they're not competing, that it's a facade, that they share the same – I understand. I guess I'm trying to figure out where in the complaint do I find, other than your bald-faced allegation, which you say the district court should have – that they were using Iqbal Twombly unwisely, but where do I find that, if you will, the facts that underlie that conclusion you've alleged? We've alleged they all operate out of the same headquarters. They have common ownership. They use the same phones. They use the same database. When someone calls in, they record the number, and we've alleged they collude on the bids. To me, it's no different than if Wells Fargo, B of A, and Bank of the West were all owned by the same company, but they don't disclose it, and you go to each of the three to get a quote on a refi for your house, and they all bid 8%. Why would they bid different? They're all owned by the same company. They don't want to compete with each other. What we're alleging here is there's a complete absence of competition because consumers are led to believe that they are competing when they're really not, whereas if our client were able to get into the market, they would give a competitive bid. They'd give a higher bid. Not in all cases, but we want the opportunity to compete on a level playing field, not competing against someone who has a 75% of the market and is using three different brands for the same purpose. I understand your point. All right, counsel, you have 52 seconds left. Do you want to save it for rebuttal? Yes, Your Honor. Thank you. Thank you. Good morning, Your Honors. Michael Williams on behalf of Respondents J.G. Wentworth and Peachtree. What the district court did here is exactly what the Supreme Court instructed courts to do in Twombly and Iqbal. Look past the formulaic recitations, look past the legal conclusions, look past the unsubstantiated characterizations, and figure out, do the actual facts alleged support a plausible, not just possible, but plausible claim for relief? And she correctly found that they did not. With regard to antitrust injury, she went through each theory that they alleged and found they are either fundamentally inconsistent with antitrust law or there are simply no facts there to support it. Now, once again, Novation has conceded that they're not claiming the acquisition alone caused antitrust injury, although in their briefs before this court, they continued to focus heavily on the acquisition. They've waived that. They've waived that now. So with regard to their mark. I tried to go through exactly what their claims were, and the first one as to the arising from the point of the acquisition, that's out. Why don't you try the Lanham Act claim? Sure, Your Honor. It seems to me that's your toughest claim. Your Honor, I disagree respectfully because the Well, I'm just trying to help you get to that claim. No, I appreciate that. I heard what his argument was. So the Lanham Act on its face requires the first element, a false statement of fact. Yes. Well, you don't have to have a false statement of fact necessarily. You can get it by, so says the case, a necessary implication. But, Your Honor, actually the requirement of a false statement of fact is still an element. What the courts have said is you could either show that the statement is literally false, the statement is false by necessary implication, or the statement is misleading and likely to mislead. You still have to have a statement. There is no statement in any of these ads that they can identify to say that it's either literally false, false by necessary implication, or misleading. So you're suggesting that's simply because you don't say what you should have said, that that doesn't lead to the false statement? Well, I don't think there's an obligation. The should have have, I would take issue with. That's what they're suggesting. I mean, that's what their complaint suggests. But there's no legal support for the notion that you can assert a false advertising claim based upon an omission of fact. There is simply nothing out there, and we have cited cases that show the opposite, that an omission of fact cannot form the basis of a false advertising claim because there is no statement. And think about the chaos that would do. But as to the deception, when you don't, that's what they're suggesting arises to the claim. And, Your Honor, what has happened, and the courts have come a long way from Brookfield back in the 90s in terms of Internet advertising, and this court's decision in the multi-time machine versus Amazon case made it very clear that what you're looking at now are you have an array of consumers. And with anything, you look at what is the reasonable consumer under the circumstances. What the Ninth Circuit explained in that case is when you're looking at expensive items. In that case, it was a $400 watch. You can expect as a matter of law that it's a reasonably prudent, sophisticated shopper. That's what the court said, as a matter of law. It wasn't a factual dispute with regard to that. And the court even noted, sure, you may have some people out there that are confused by it, but that's not the focus. The focus is on a reasonably prudent consumer. And what do you do? The court said you look at two things. What does the ad show? What are people going to see? And what are they going to take away from that? Here, people can type in hundreds of search terms, and they get different ads. And the ad itself is not false or misleading. There's no statement in it that they can identify as false or misleading. And there's no obligation to disclose to common ownership. So what they're trying to do is bootstrap on that this, well, we think you shouldn't tell everyone you're commonly owned. And because of that, it must be false and misleading. Why don't they spend their time and money, instead of litigating this case, running advertisements that say, guess what? J.G. Wentworth, Peachtree, Olive Branch, they're all the same company. Come shop with us, and you'll get a competitive bid. That's what they should be focusing on. That's what the Ninth Circuit explained, why false advertising generally is not anti-competitive and has a de minimis impact on competition because competitors can do that type of thing. Counsel, when Judge Smith said that the Lanham Act claim was your toughest one, you respectfully disagreed. What is your toughest claim? Oh, I didn't. I apologize. I did not respectfully disagree that that was our toughest claim. I think I took issue with the characterization or plaintiff's characterization of the claim. Oh, I don't know that you really did that. I was going to ask you the same question. I'm glad she did because you said, well, I don't think it is. But I thought, well, then what is? Okay, go ahead. Your Honor, we would think that they are all equally as easy as the district court properly found. I mean, they had three chances here. And the antitrust injury, the court really knocked each one out of the park. She went through methodically and explained why there isn't any. And I do want to come back to the market foreclosure issue that Judge Smith, you mentioned. You hit it on the head. I mean, first of all, they have defined the relevant market. We had to accept that as true for purposes of the pleading, and the district court did as well. It's the market for purchasing of structured settlement payments. It's not limited to Google's AdWords program. It includes, as their own allegations make clear, television, radio, internet search, Google, Bing, Yahoo, everything where people can search for it. And they are the ones that have focused solely on Google. So they have no factual allegations that they've been foreclosed from any other aspect of the market. And with regard to Google, it comes down to nothing prevents them from bidding more to buy the top spots. What they're really complaining about is the same thing the Supreme Court rejected in Brunswick. They're saying, and I know they've moved past the acquisition, but hey, we still now have to compete with both J.G. Wentworth and Peachtree. We shouldn't have to do that because if there was an acquisition, Peachtree should be removed from the market. And we shouldn't have to pay as much because now we're one less competitor out there. Well, no, you can't complain as a competitor because competition was not reduced. And that's essentially what they're saying. There's companies like annuity.org that pop up as the top spots, and these are ads that they ran and they selected and district court recognized. Anyone can obtain them if they're willing to pay for it. That is vigorous competition. And as Cargo makes clear, it doesn't matter if we're able to do that and pay more as a result of the synergies because of the acquisition. That's besides the point because that's competition. And they mentioned predatory pricing. We've never been the ones arguing for predatory pricing. They have references to predatory pricing and bidding in their complaint. And what the district court properly did is she said, look, predatory pricing is the type of anti-competitive conduct which a competitor can show antitrust injury from. So if you can make out a claim for predatory pricing, go for it and that would get you past it. But they didn't and they can't and they admit they can't. And so when it comes to the bidding or pricing aspect, what the Supreme Court made clear, and this court has reiterated, is when it comes to pricing, the only anti-competitive conduct is predatory pricing. That's the only thing. The Atlantic Richfield case made that clear. And so you can't complain about other pricing mechanisms by a competitor unless you're focused on predatory pricing. So the fact that we may be paying more for these bids and we may appear more frequently in the top spots doesn't create antitrust injury on their part. With regard to the consumer harm issue, the district court properly concluded that they cannot assert consumer harm as the basis for their antitrust injury. That's the post-acquisition advertising claim. Correct. But even more fundamentally, the notion that a competitor can claim antitrust injury from consumer harm has been repeatedly rejected and soundly rejected for good reason. The courts don't want to dilute the antitrust injury. If consumers are actually getting fleeced the way that they claim they are, they are the ones that should be bringing suit here. But there isn't this consumer harm that they're making it out to be. Why? Because the legislatures for the various states have set in place a regulatory scheme for the sole purpose of protecting consumers. Every transaction has to go through this process. Every transaction has to be publicly disclosed in court filings. A judge has to make findings of fact, a number of them. There's a whole list of disclosures the statute requires with regard to the rates that are being paid, the pricing, the terms. It has to be in plain English so people can understand it. In this situation, are all of these settlements, do they all need to be approved in California? Yes. Including those that are for people who are of age? Yes. And if you do not get approval or have sufficient capacity, they all have to be approved. They all have to be approved. And there are significant penalties if they're not approved in addition to voiding it. So once again, what the Supreme Court teaches in the Trinco case is that when you have a regulatory scheme in place, courts need to be wary not to impose additional antitrust liabilities on that because there's been a decision made to regulate that field already. And the regulation here is to address the alleged consumer harm that they're complaining of. It works fine, and if they have an issue with it, it should be taken up by the legislature and not before a court under the guise of a competitor antitrust action. Finally, with regard to the state law claims, Judge Smith, I agree with you that the standard, they do rise and fall. With regard to the unlawful prongs, the CELTEC case makes clear it has to be an antitrust injury or an incipient violation of one. That's no different than the federal standard. With regard to the fraudulent standard, they have to show a false or misleading statement and tendency to deceive, which they haven't shown. And then with regard to the unfair prong, I mean the unlawful prong, they have not alleged any violation of a legal norm. So, Your Honors, unless you have other questions or there's anything else you'd like me to address, I will surrender the remainder of my time. All right. Thank you, counsel. Thank you. Rapallo. Thank you. As to the antitrust injury point, we have alleged antitrust injury to innovation, competition, and consumers. We're not relying on the consumer antitrust injury to supplant the antitrust injury innovation needs to show. And this Court in Rebel Oil 51 F. 3rd at 1445 strongly pronounced that because the Sherman Act's concern is consumer welfare, antitrust injury occurs only when the claimed injury flows from acts harmful to consumers. As to the omission can never be a Lanham Act violation, they're relying on a district court case from the Sony Universal Betamax case from 40 years ago. And as to that, this Court found in the Lamothe case. Is Lamothe your best case? Lamothe and the Second Circuit opinion and others cited at footnote 23 of our brief all talk about, you can have a false impression created from an omission, and it's not as a matter of law an omission can never be a Lanham Act violation. And Lamothe is at 847 F. 2nd at 1407 to 1408 that basically said the conclusions in the Universal District Court case were dicta. So we have footnote 23 lays out those cases, and then what we're saying is the unfair competition claim. The unfair prompt does not require a violation of the Lanham Act or the antitrust laws. It's a lesser standard, it just is a threatened antitrust violation. Lastly, I hit the consumer harm that that is a requirement for antitrust injury. And we're not complaining of any pricing in this case. It's not price levels, it's not a predatory pricing case. The complaint here is market foreclosure to innovation and a reduction in competition because consumers are deceived into believing that these three are really competitors, so when they call up the first two or three, they stop there, they never get to my client. We're foreclosed from the market. Thank you, counsel. I understand your argument. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Fernandez, Rawlinson, N.R. Smith